NORTH BRIDGEWATER SAVINGS BANK *vs.* OAKES S. SOULE.

Plymouth.    Jan. 29. — Oct. 22, 1880.    MORTON & SOULE, JJ., absent.

In an action by a savings bank against the surety on a promissory note, to which the defence was payment, there was evidence that the treasurer of the plaintiff bank, who was the officer in charge of its business, and the defendant were joint sureties on another note, which had been paid by the defendant, and which was signed by the same principal as the note in suit; that, on the bankruptcy of this principal, an agreement was entered into by the treasurer and the defendant, by which the treasurer should pay the note held by the bank, and the defendant should deliver to the treasurer the note paid by him, and pay the treasurer whatever on a final settlement should be found to be due; that the note held by the bank was delivered by the treasurer to the defendant, and proved by him as a claim against the estate of the bankrupt, and the treasurer proved the other note as a claim held by him against the same estate, and stated to the register that the bank had received payment on the note formerly held by it. It was admitted that the note in suit was not in fact paid by the treasurer, and there was evidence that, on the death of the treasurer, the note was found with the other securities of the bank. *Held*, that this evidence constituted no defence to the action.

The St. of 1878, *c.* 261, allowing a person indebted to a savings bank, in a proceeding for the collection of the debt, to set off the amount of a deposit held and owned by him at the commencement of such proceeding, is constitutional.

An assignee of a deposit in a savings bank can set off the same, under the St. of 1878, *c.* 261, against a claim of the bank, without a previous notice to the bank of the assignment.

CONTRACT on four promissory notes, the first of which was for $3000, and was signed by the defendant as principal, and the rest were signed by him as surety for the firm of Porter &

Southworth. Writ dated November 30, 1877. Answer, payment. The defendant also filed a declaration in set-off, alleging that on March 28, 1877, one Patrick Fitzgerald had a deposit in the plaintiff bank of $1030, with interest and dividends thereon; that, on that day, Fitzgerald, for a valuable consideration, assigned the deposit to the defendant; and that before proceedings in equity to restrain the plaintiff from doing its usual business, the defendant held and owned said deposit.

Trial in this court, before *Lord*, J., who reported the case for the consideration of the full court, in substance as follows:

The defendant admitted his liability upon the first note; and offered evidence tending to prove that the other notes were signed by him for the accommodation of Porter & Southworth, a firm consisting of Lewis Porter, the son-in-law of the defendant, and George Southworth, the son of Edward Southworth; that Edward Southworth was, and had been for many years, the treasurer of the plaintiff bank, and was the only officer attending to its business; that, at some time in 1875, the firm of Porter & Southworth failed; and at the time of their failure the defendant and Edward Southworth were jointly liable, as sureties on a note for $3000, given for the accommodation of Porter & Southworth, and held by the Randolph National Bank; that the defendant paid this note; that the firm of Porter & Southworth went into bankruptcy, and a meeting of their creditors was held in September 1875, before a register in bankruptcy; that on the day of this meeting, and prior thereto, the defendant went to the plaintiff bank, and there saw Edward Southworth, and stated to him that he was advised that he had no right to prove the notes held by the bank against Porter & Southworth, unless he had paid the same, but that it was inconvenient for him to pay them that day, and that, if Southworth would pay them, he would transfer to him the note paid by the defendant at the Randolph Bank, and would pay him afterwards whatever amount the defendant on final settlement should owe him; that Southworth agreed to do this, and subsequently came to the creditors' meeting, and delivered the three notes to the defendant, stating that he had paid the same, and the defendant thereupon delivered to him the note paid by the defendant at the Randolph Bank; that Southworth made proof

of the note for $3000, as a debt due himself, and the defendant made proof of the three notes as a debt due to himself, which proofs were made in the presence of the defendant and Southworth respectively; that the defendant never consented to the notes in suit being taken from the office of the register, and had no knowledge that they had been so taken until this action was brought.

Rufus P. Kingman, one of the receivers of the plaintiff bank, testified that shortly after the decease of Edward Southworth, in March 1877, he examined the papers and securities of the bank, and found the three notes in question in the regular place of deposit of personal securities due to said bank. No question arose that the notes were received by the defendant in good faith, and with the belief that the title of the bank to the same was passed to him, and with the belief that Southworth had paid them at the bank.

The defendant further offered to prove that, at the creditors' meeting, the register inquired of Southworth whether the bank had been paid for the notes, and that Southworth replied that it had been. The court excluded this evidence, against the defendant's objection.

The defendant admitted that Southworth had not paid the bank for these notes.

In support of the claim in set-off, the defendant proved the facts therein set up. It appeared that the proceedings to restrain the bank from doing business were brought in November 1877; and that no notice of the assignment was ever given to the bank.

If there was any question of fact to be submitted to a jury, the case was to be so submitted; otherwise, such judgment to be entered as to the court should seem proper.

*E. Ames*, (*J. White* with him,) for the plaintiff.

*R. M. Morse, Jr.*, for the defendant.

LORD, J. The first question presented is as to the liability of the defendant on the three notes signed by him as surety for the firm of Porter & Southworth. The defendant contends that the plaintiff bank is bound by the action of its treasurer, and is estopped to deny that the notes have been paid to the bank, or that the defendant now lawfully holds them.

This depends upon the decision of several different questions; for if, in point of fact or by operation of law, these notes were paid, then they are discharged, not by way of estoppel, but by satisfaction. If, upon the other hand, they have not been paid, but the legal custodian of them had accepted from the maker something which he had the right to accept in lieu of payment, and had actually delivered the notes to the defendant as paid, and this was done in a course of proceeding authorized by the plaintiff, or subsequently ratified by the plaintiff, the plaintiff would be estopped from denying the payment. If the settlement were made without the plaintiff's authority, and by it any property of value came into possession of the plaintiff, or the defendant was put in a worse situation than before, the plain-tiff could not disaffirm the contract, without repaying to the de-fendant the money paid by him, or restoring him to his former condition.

A careful examination of the facts as reported does not dis-close either of these conditions. In point of fact, the notes were not paid. The evidence reported would not have war-ranted a jury in finding that the defendant changed his con-dition to his prejudice. The arrangement was apparently a personal arrangement between himself and Edward Southworth. It does not appear that either of them understood that his own liabilities upon the various contracts were in any manner to be affected; but, on the other hand, their respective liabili-ties were to remain the same, except that, in the subsequent settlement between the defendant and Edward Southworth, Southworth was to be permitted to set off his liability for con-tribution on the note held by the Randolph National Bank against his claim against the defendant upon the disputed notes. If this arrangement had been actually consummated, a different question would have been presented. As it is, the whole agree-ment was executory, and still remains so. The delivery of the notes in suit to the defendant was merely for the purpose of en-abling him to prove them in bankruptcy, and not for the purpose of discharging the defendant from his liability upon them; that was to remain. The giving up to Southworth the note which the defendant paid at the Randolph Bank did not discharge Southworth's liability to the defendant upon such note, and was

not understood by either of the parties to be such discharge, but the full amount of his liability was to remain and be accounted for between the parties. The mere fact that the defendant did not know that the notes had been taken from the register's office is a wholly immaterial fact, and can in no mode affect any one's title to them.

If we could see that from any or all these facts a jury would be warranted in finding a discharge of the defendant, in law or in fact, by reason of payment or by estoppel, or if we could see any evidence of fraud upon the part of the plaintiff or its authorized agent, such as would relieve the defendant from his liability upon the notes, we should direct the case to stand for trial, so far as those notes are concerned. But, seeing nothing which would warrant a jury in finding the defendant to be discharged, we think the plaintiff is entitled to judgment upon them.

The only remaining question is whether the defendant is entitled to set off the deposit in the plaintiff bank assigned to him by Patrick Fitzgerald in March 1877. This claim for set-off is made under the St. of 1878, c. 261, which enacts that "any person indebted to a savings bank in this Commonwealth, whether his indebtedness is secured or not, may in any proceeding for the collection thereof, or for the enforcement of any security therefor, set off the amount of any deposit in said bank held and owned by him at the time of the commencement of such proceeding, and of the interest due thereon : provided, however, that this act shall not authorize the set-off of any deposit purchased or acquired from another after the commencement of proceedings in equity to restrain such bank from doing its usual business, or after the issuing of an order under the provisions of chapter seventy-three of the acts of the year eighteen hundred and seventy-eight."

It is not contended by the plaintiff that the interest of the defendant in the deposit in question is not included under the words "held and owned by him," in the St. of 1878, c. 261; and a consideration of the proviso, by which a particular class of assignments is excluded from the operation of the statute, shows very clearly that the Legislature regarded the words "held and owned by him" as including an ownership acquired by assignment. The objections urged by the plaintiff are two : first, that

the defendant, in order to maintain his claim, ought to have given notice to the bank of his acquisition of Fitzgerald's deposit; and, second, that the St. of 1878, c. 261, is unconstitutional.

The latter of these objections is first to be considered, for, if it be sustained, the whole proceeding for set-off falls to the ground.

No argument is made upon the question, and the making of the objection appears to have followed a suggestion coming from the attorney general's office to the receivers of the North Bridgewater Savings Bank, in May 1878, that there were grave doubts as to the constitutionality of the law as applied to insolvent savings banks. In what respect the grave doubts have arisen is left quite indefinite.

On a careful consideration of the statute, we have been unable to perceive in it any element of unconstitutionality. The only ground on which an apparent objection to the statute might rest is the fact that a creditor of the bank, who is also a debtor of it, is entitled, in the case of the insolvency of the bank, to recover, up to the limit of his indebtedness to the bank, a larger proportion of his claim against the bank than one who is merely a creditor. But such an objection is only an apparent one. Upon examination, the provision of the statute in this regard is found to be really an equitable provision. The right of set-off is originally an equitable right, and is based upon equitable principles. It is obvious that, at any time before the commencement of proceedings in equity to restrain a bank from doing business, or before the issuing of an order under the St. of 1878, c. 73, the amount equitably due to the bank from any debtor of the bank who was also a creditor would be simply the balance of his debt, after deducting all credits due him from the bank. If, as the result of such proceedings or order, the demand of the debtor against the bank were to be reduced while his debt remained unchanged, it would follow that by the insolvency of the bank his equitable indebtedness to the bank would be increased. It was to remedy such a liability that the statute was passed; and its provisions are similar in effect to those of the insolvent law, which permit demands against the insolvent debtor to be set off in actions by the assignee in insolvency, unless they' have been acquired within six months, and with

reasonable cause to believe the debtor insolvent. Gen. Sts. c. 118, § 48. The limitation of six months was in this case deemed by the Legislature unnecessary, perhaps on account of the improbability of speculation upon the approaching insolvency of a savings bank, and the restriction in the St. of 1878, c. 261, is laid only upon claims acquired after proceedings actually begun or order issued.

As to the want of notice, there is nothing in the statute that requires notice as betweeen the parties. If the right of set-off had been given subject to the provisions of the Gen. Sts. c. 130, or any part thereof, the question would be a different one; but we are clearly of opinion that, to maintain a set-off under this statute, no notice of assignment to the bank is necessary. The amount of the deposit assigned to the defendant by Patrick Fitzgerald, and of the interest due thereon, must therefore be set off against the amount due from the defendant.

*Judgment accordingly.*